IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE GORILLA GLUE COMPANY, SALT CREEK INVESTMENTS, SALT CREEK DEVELOPMENT, LLC AND SALT CREEK PROPERTIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CENTIMARK CORPORATION, <br><br> Defendant. | 2:17-cv-00261-MRH-CRE |

## MEMORANDUM OPINION

**Mark R. Hornak, Chief United States District Judge.**

This matter is before the Court on Defendant Centimark's objections (ECF No. 85) to the November 20, 2018, Report and Recommendation ("R&R") of Chief Magistrate Judge Cynthia Reed Eddy, (ECF No. 84). The R&R recommends that Defendants' Motion for Summary Judgment (ECF No. 72) be granted in part and denied in part.

In resolving a party's objections, the Court conducts a *de novo* review of any part of the R&R that has been properly objected to. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the recommended disposition, as well as receive further evidence or return the matter to the Magistrate Judge with instructions. *Id.* Upon careful *de novo* review of the complaint, the motion for summary judgment, the parties' briefs in connection with the motion for summary judgment, the R&R, and the objections and brief in support thereof, the Court concludes that the objections will be sustained in part and overruled in part. The Court will adopt the R&R as modified below as the Opinion of the Court in the Order that follows.

1

## I. BACKGROUND

### a. Factual and Procedural History[1]

This case arises from a partial roof collapse that occurred at Plaintiff's Ohio facility in 2015. On the evening in question, the center section of Plaintiff's roof partially collapsed after the building experienced a significant rain storm. Disputed facts remain as to the amount of rain that fell and over what time period, but one estimate clocks it at 2.5 inches of rain over 39 minutes.

Defendant CentiMark is a commercial roofing and flooring company and was hired in the fall of 2013 to reroof Plaintiff's building. The parties dispute some factual issues as to what exactly Defendant's proposal required, but ultimately Defendant reroofed over the existing roof structure without altering the original design of the roof slope and/or roof drainage system. According to Plaintiff, this solution was unacceptable because under the Ohio Building Code ("OBC"), Defendant was required to reroof the building in conformance with the code.

Plaintiff's Amended Complaint asserts causes of action for: Count I, negligence; Count II, breach of contract, and Count III, breach of implied warranty. Defendant filed a motion for summary judgment, and the matter was fully briefed.

### b. Report and Recommendation and Objections

The R&R concludes that Defendant's motion for summary judgment should be granted in part and denied in part. The R&R concludes that the Non-Prorated Limited ("NPL") Warranty was part of the contract between the parties ("Contract"), and therefore Defendant should be entitled to summary judgment as to Count III for breach of implied warranties. The R&R recommends that Defendant's motion should be denied as to Count I for negligence, because genuine disputes of material fact remain, particularly with regard to causation. The R&R determines that which section

---

[1] A full overview of the facts of the case can be found in the R&R, ECF No. 84.

of the OBC controlled the standard of care is disputed and a matter for the factfinder to decide. Moreover, the R&R states that disputes remain as to whether Plaintiff failed to maintain the roof as required under the warranty. And the NPL Warranty excludes claims caused by an "Act of God," which is a factual question. Finally, the R&R also recommends that Defendant's motion for summary judgment on limitations of damages be denied.

Defendant filed Limited Objections to the R&R, arguing that (1) the limitation on damages in the NPL Warranty is applicable to all of Plaintiff's claims; (2) there is no issue of fact as to the findings of Defendant's weather expert; and (3) clarification is needed as to the application of the OBC. (Centimark Corp.'s Limited Objections to Magistrate's Report & Recommendation ("Def.'s Br."), ECF No. 85.) Plaintiff responded that none of these objections should be sustained, but that the Court should decide, as a matter of law, which provision of the OBC applies. (Pl.'s Response in Opp. To Def.'s Limited Objections ("Pl.'s Br."), ECF No. 86.) After reviewing these filings, the Court requested that Defendant file a reply in support of its Objections, specifically regarding the applicable provisions of the OBC, which Defendant did. (Def.'s Reply in Support of Its Objections ("Def.'s Reply"), at 88.) The Court has reviewed all of these filings, in addition to the R&R and the underlying record, and the matter is ripe for disposition.

## II. DISCUSSION

Defendant contends that (1) the NPL Warranty's limitation on damages is applicable to all of Plaintiff's claims; (2) there is no issue of fact as to the findings of Defendant's weather expert; and (3) clarification is needed as to the application of the OBC. For the reasons that follow, the Court will overrule Defendant's objections except as to its request to clarify the OBC's application. The Court will sustain that objection only to the extent that it requests that the Court decide as a matter of law which provision of the OBC applies. The remainder of that objection is overruled.

### a. Limitation on Damages

First, Defendant objects to the R&R's finding that the limitation on damages clause in the NPL Warranty issued by Defendant to Plaintiff does not cap Plaintiff's available damages in the suit. Defendant asserts that if the NPL Warranty is deemed part of the Contract (a conclusion in the R&R to which Defendant does not object), then Plaintiff's claims for damages must be limited under its terms.

The NPL Warranty, which the R&R concludes forms part of the Contract, obligates Defendant to "repair any leaks resulting from defects in the material or workmanship in the roof services." (Def.'s Ex. K ("NPL Warranty"), ECF No. 72–11, at 2, § 1(a).) It further provides that:

> If CentiMark determines that the leaks in the roof are caused by defects in the materials or workmanship supplied by CentiMark, Purchaser's remedies and CentiMark's liability shall be limited to CentiMark's repair of the roof. The value of CentiMark's services performed under this Warranty shall not exceed the original cost of the roofing services to the Purchaser.

(*Id.*)

The R&R concludes that the cap on warranty services is inapplicable because (a) Defendant denied that its materials or workmanship caused the leak and damages, and (b) Plaintiff is not asking Defendant to perform work under the warranty's terms. Defendant argues that the Warranty clearly states that the value of its services under the contract cannot exceed the original cost of the roofing services, here, $211,500.00.

Defendant cites to *Timber Ridge Homeowners Assoc. v. CentiMark Corp.*, No. 2:16-cv-2858-JAM-AC (E.D. Cal. 2016), which it has attached as ECF No. 85, Ex. A. There, the Court held that the non-prorated limited warranty was part of the contract and limited CentiMark's (also a defendant in that case) liability to the repair of the roof and the value of the services performed under the contract. As Plaintiff points out, however, in *Timber Ridge*, the claim was premised on

4

a defective and/or leaking roof, as plainly contemplated by the warranty. By contrast here, Plaintiff is not seeking damages stemming from defects in materials or workmanship, or for a broken promise to perform warranty work. Rather, Plaintiff alleges damages based on Defendant's failure to recommend or install secondary drains.

The damages limitation contained in the NPL Warranty is not an absolute limitation on damages. It is conditioned on Defendant performing repairs on roof leaks within the Warranty's scope. It does not apply here because Defendant contends that the leaks did not result from any faulty workmanship on its part, and Plaintiff is not seeking recovery based on any such faults. Therefore, the limitation arising from the warranty does not apply. This objection to the R&R will be overruled.

### b. Weather Expert

Next, Defendant finds fault with the R&R's conclusion that a material issue of fact remains as to whether the rainstorm that caused the roof to collapse was an "Act of God." Under the terms of the NPL Warranty, Defendant would not be liable for damages caused by an Act of God. The R&R notes that the parties' experts disagreed about how much rain fell in what period of time, and whether that amount would constitute an Act of God. However, Defendant avers that Plaintiff failed to present evidence to controvert Defendant's weather expert's report or testimony and that Plaintiff conceded the point by its expert's purported agreement with Defendant's expert as to the rainfall.

As a preliminary matter, Defendant did not argue in its motion for summary judgment that there was no genuine issue of material fact because Plaintiff's expert allegedly agreed with Defendant's expert about the rainfall. Neither Defendant nor Plaintiff attached the page of Honig's deposition transcript, on which Defendant now relies, as an exhibit to their briefing. This argument

5

was therefore never before the Magistrate Judge, and is not properly before this Court. *See Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) ("[B]ecause Appellant raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived.").

Even if the Court were to consider this new argument, it does not hold water. Defendant's expert concluded that "2.5 inches of rain fell between 6:09 and 6:48 p.m." (Pl.'s Ex. L ("Mancini Report"), ECF No. 79–14, at 17.) Plaintiff's expert concluded that only 1.87 inches fell within a two-hour period at the subject property. (Pl.'s Ex. A ("Honig Report"), ECF No. 79–3, at 4.) Defendant's expert, Dick Mancini, is a meteorologist. (Mancini Report, at 17.) Plaintiff's expert, Daniel Honig, is an engineer. (Honig Report, at 7.) Defendant points to Honig's deposition, in which he addressed Mancini's report, and the following exchange:

> Q: He indicates from between 6:09 to 6:39 there occurred about 2 inches of rain representing a 100-year event?
> A: That's what he states.
> Q: And he said from 6:09 to 6:48 there occurred 2.5 inches of rain, approximately a 200-year event?
> A: Yes, that's what he states.
> Q: Do you have anything to dispute that?
> A: No. He's a weather expert. He's describing based on the weather conditions, and he cites them in his previous 15 pages, the various National Weather Service locations . . . .

(Pl.'s Ex. E ("Honig Dep."), ECF No. 86–5, at 3.)

Defendant interprets this exchange to say that no dispute remains because Honig did not dispute Mancini's opinions about the amount and intensity of the rain, or that it was a 200-year event. This reading is strained. The parties' experts collected their data from different sources, and the reliability, relevance, and applicability of these sources are all disputed. Honig is not repudiating his own data or agreeing with Mancini's data. Rather, he is saying that *Mancini's*

6

*sources* may support *Mancini's* conclusion. A genuine dispute remains as to how much rain fell. The Court therefore will overrule this objection to the R&R.

### c. Ohio Building Code

Finally, Defendant objects to the R&R's conclusion that the factfinder should decide which Chapter of the Ohio Building Code ("OBC") applies. The R&R states that "there can be no dispute that when defendant performed the work in 2013, the 2011 version of the OBC was in effect." (R&R, at 10.) However, the R&R does not specifically provide how the OBC should be interpreted as to whether secondary drains were required at the time Defendant performed the roof services, and does not state which OBC Chapter governs the standard of care. The parties agree that the Court should determine, as a matter of law, which provision or provisions of the OBC apply. Plaintiff avers that Chapter 15, regarding roof installations and reroofing, applies to the Project. Defendant argues that Chapter 34 of the OBC, applying to the maintenance repair of existing structures, applies.

The OBC's 2011 version of Chapter 15 addresses roof installations and reroofing. It sets forth various requirements for new buildings when roofing is originally installed, as well as for reroofing on existing buildings. The 2011 version of Chapter 34 is a broad provision applying to "maintenance, alteration, repair, additions and changes of occupancy of existing structures." Ohio Admin. Code 4101:1–3401.1 (2011). "Existing structure" is defined as "a structure regulated by this code that was erected or one for which a plan approval has been issued." *Id.* § 3402.1. Chapter 34 notes that the requirements in Chapters 1–33 apply to the construction of new buildings, except under circumstances where Chapter 34 provides other guidance. *Id.* §§ 3401.2; 3404.1. Plaintiff argues that this is plainly a "reroofing" and therefore Chapter 15 governs. Defendant points to Ohio's "vested rights" doctrine, which prohibits retroactive application of the building code, and

7

interprets it to mean that Defendant's "roofing re-cover" is maintenance, alteration, or repair of an existing structure, so Chapter 34 controls. (Defs.' Br., at 6.)

The OBC has rules of construction and interpretation providing that when different sections of the OBC conflict, the "most restrictive shall govern." Ohio Admin. Code 4101:1–102.1 (2011). And if a general requirement conflicts with a specific one, "the specific requirement shall be applicable." *Id.*

A "roof assembly" as used in the code, "consists of a roof covering and roof deck." *Id.* § 1502.1. The code defines "reroofing" as "the process of recovering or replacing an existing roof covering." *Id.* Chapter 15 requires that "[r]oof coverings shall be designed and installed in accordance with this code." *Id.* § 1503.1. Moreover, "[m]aterials and methods of application used for recovering or replacing an existing roof covering shall comply with requirements of Chapter 15." *Id.* § 1510.1.

Defendant avers that these specific reroofing provisions do not apply because Defendant's work was "at most a repair," (Def.'s Br., at 6,) and that the Building is an existing structure, so only the standards applicable at the time it was constructed (in 1963) can apply, according to Ohio's "vested rights doctrine." Defendant points to the 2011 Commentary by the Ohio Board of Building Standards, interpreting R.C. 3781.12, which codified the prohibition of retroactivity for existing buildings. That Commentary states:

> Clearly there is no retroactivity permitted for existing buildings when the code has been modified. The owner has vested rights at this point that cannot be removed because the OBC subsequently changed. The initial submission was a good faith effort to comply with the OBC effective at the time and the authority having jurisdiction, in granting an approval, acknowledged that compliance.

Ohio Admin. Code 4101:1–102.7 cmt. (2011), available at https://www.com.ohio.gov/documents/dico_414.pdf.

8

Plaintiff and Defendant presented competing expert testimony as to which provision of the OBC should apply. Defendant's expert, a member of the Ohio Board of Building Standards, admitted that section 1510.1 of Chapter 15 specifically addresses reroofing and that Chapter 34 contains no mention of reroofing. Yet he also opined that section 1510.1 "doesn't exist" and/or "has no purpose." (Ex. G, Collins Dep., at 78, 86.) He testified that section 1510.1 "is a section that is published as reroofing, but it doesn't cover reroofing." (*Id.* at 78.) He further stated that its inclusion in the OBC was a publishing mistake, although he also said that 1510.1 was not removed in the subsequently adopted 2017 version of the OBC. (*Id.* at 79–80.) Plaintiff's expert report concluded that Chapter 15 should apply because its provisions "are specific to the roof system installer and the roof component manufacturers," and Defendant designed and installed a roof system. (Zielinski Rep., ECF No. 86–2, at 6.)

The Court concludes that Chapter 15's provisions apply and provide the relevant standard of care for Defendant's reroofing of Plaintiff's Building. By its terms, "reroofing" is the process of replacing an existing roof covering, which will always happen on an existing building. Putting a roof covering on new construction would simply be "roofing." Defendant's insistence that *no* provision of the OBC other than Chapter 34 could apply to any modification to an existing building makes little sense when coupled with the fact that the OBC specifically contemplates that "reroofing," a modification to an existing roof, will be governed by Chapter 15. Defendant has provided no legal authority for the proposition that Chapter 15 does not apply. Also, Defendant's expert's position that Chapter 15 does not exist or does not govern in this case conflicts with another of Defendant's own arguments, based on the 2017 version of the OBC's Chapter 15, that the secondary drains were *not* required in reroofing. (*See* Def.'s Reply, at 8.) If Chapter 15 was

9

merely an editing error, as Defendant's expert contended, then certainly a 2017 version of Chapter 15 could not provide the relevant standard of care.

Moreover, while the vested rights doctrine functions to protect owners from constantly having to upgrade and modify their properties according to the current code, that backward-looking provision does not apply where, as here, a property owner specifically undertakes an improvement or project covered by a separate provision of the code. It would defy logic to adopt a view that buildings are, in perpetuity, only subject to the code in existence at the time they were built, even if owners undertake extensive renovations contemplated by separate, specific code provisions.

What is more, Chapter 34 itself states that, for instance, buildings and structures in flood hazard areas as defined by the code that are subject to "any repair that constitutes substantial improvement of the existing structure," "shall comply with the flood design requirements for new construction." Ohio Admin. Code 4101:1–3405.5 (2011). Thus, even Chapter 34 contemplates that some changes or repairs to the property will have to be done in accordance with requirements for new construction, rather than obeying only the requirements in force when the property was first constructed.

Additionally, Defendant's position does not accord with the OBC's own rules of construction, providing that the more restrictive code provision shall govern if there is a conflict. Chapter 34 is a general provision, applying to repairs and maintenance on all existing buildings. Chapter 15 is a specific provision governing, in part, reroofing. Under the familiar canon of construction *generalia specialibus non derogant*, codified in the OBC's own rules of construction, Chapter 15 is the more specific provision and therefore governs over Chapter 34. *See, e.g., Ex Parte Kan-Gi-Shun-Ca a/k/a Crow Dog*, 109 S. Ct. 556, 405 (1883) ("[T]he legislature having had

10

its attention directed to a special subject, and having observed all the circumstances of the case and provided for them, does not inten[d], by a general enactment afterwards, to derogate from its own act when it makes no special mention of its intention so to do." (quoting *Fitzgerald & Champneys*, 30 L. J. Ch. 782 (Wood, V.C.)).

Nor does Defendant's argument that the project was merely a "roof recover" insulate it from Chapter 15's application. Chapter 15 defines "reroofing" as "the process of recovering or replacing an existing roof covering." Ohio Admin. Code 4101:1–1502.1 (2011). The Project here involved re-covering the existing roof system with a new membrane and fiberboard insulation. (R&R, at 3.) It plainly entails "the process of recovering . . . an existing roof covering," § 1502.1. Defendant was therefore required to perform the work in accordance with Chapter 15's requirements, including assessing the roof drainage as required by § 1503.4. Whether Defendants' actions in re-covering the roof met the standard of care as established in Chapter 15 is a matter yet to be determined. But as a matter of law, Chapter 15's provisions apply. Defendant's objection as to this matter is sustained only as to the question of whether the Court should determine which provision applies as a matter of law, and is overruled in all other respects.

## III. CONCLUSION

After a *de novo* review of the pleadings and documents in this case, including the motion for summary judgment and briefs in support and opposition thereof, the Report and Recommendation, and the parties' Objections and responses thereto, the Court concludes that the Report and Recommendation of the Magistrate Judge will be adopted as the Order and Opinion of the Court, except as to the specific matters set forth in this Opinion.

_____
Mark R. Hornak
Chief United States District Judge

Dated: March 8, 2019

cc: All counsel of record